JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

KELLY BUFANO

**(b)** County of Residence of First Listed Plaintiff: Berks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mary Kramer; Murphy Law Group, LLC; Eight Penn Center, Suite 2000, 1628 John F. Kennedy Blvd., Philadelphia, PA 19103; 267-273-1054

**DEFENDANTS**

INTEGRATED SURGICAL INSTITUTE, LLC

County of Residence of First Listed Defendant: Berks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

Brief description of cause:
DISCRIMINATION, FAILURE TO ACCOMMODATE, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, AND RETALIATION

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE: Oct 6, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Mary Kramer

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: 1001 James Drive, Leesport, PA 19533

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:_________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____________________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):________________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____________ ______________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KELLY BUFANO<br>24 N Calais Drive<br>Reading, PA 19605<br>Plaintiff,<br><br>v.<br><br>INTEGRATED SURGICAL INSTITUTE, LLC<br>1001 James Drive<br>Leesport, PA 19533<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.:____________<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT – CIVIL ACTION**

Plaintiff, Kelly Bufano ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Integrated Surgical Institute, LLC ("Defendant"), alleges as follows:

**INTRODUCTION**

1. Plaintiff initiates this action contending Defendant violated Plaintiff's rights protected by the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, by terminating Plaintiff because of her actual and/or perceived disabilities, for her past record of impairment, because Defendant regarded Plaintiff as being disabled, and in retaliation for requesting to be reasonably accommodated in connection thereto, in violation of the ADA and PHRA.

**PARTIES**

2. Plaintiff Kelly Bufano is a citizen of the United States and Pennsylvania and currently maintains a residence at 24 N Calais Drive, Reading, PA 19605.

3. Defendant Integrated Surgical Institute, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered office address and principal place of business located at 1001 James Drive, Leesport, PA 19533.

**JURISDICTION AND VENUE**

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5. On or about August 6, 2025, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Philadelphia Commission on Human Relations ("PCHR"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2025-08158. Plaintiff's EEOC charge was filed within one-hundred and eighty (180) days of the unlawful employment practice.

6. By correspondence dated July 16, 2026, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

7. Plaintiff filed the instant action within the statutory time frame applicable to her claims.

8. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This action is authorized and initiated pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as his federal claims.

12. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties reside in this judicial district, doing business herein, and the unlawful practices of which Plaintiff is complaining were committed in this judicial district.

## FACTUAL ALLEGATIONS

13. Paragraphs 1 through 12 are hereby incorporated by reference as though the same were fully set forth at length herein.

14. Plaintiff began her employment with Defendant on or about September 12, 2022, in the position of Staff Nurse.

15. Due to her success as a Staff Nurse, in or around June 2023, Plaintiff was promoted to the position of Director of Nursing ("DON").

16. By way of background, on or about February 20, 2020, Plaintiff was diagnosed with Leukemia.

17. Leukemia constitutes a disability and serious health condition within the meaning of the ADA and PHRA in that it severely limits one or more major life activities, and requires ongoing care and/or treatment for an extended period.

18. At the time of her hire, Plaintiff sufficiently placed Defendant on notice of her disability.

19. In or around October 2024, Plaintiff began suffering from sciatica pain and discomfort.

20. Plaintiff's physician treated her sciatica pain with steroids, which affected her immune system due to her Leukemia diagnosis.

21. On or around October 28, 2024, at approximately 4:27 PM, Plaintiff emailed one of Defendant's Board of Directors, Nathan Tiedeken, M.D. ("Dr. Tiedeken"), to update him on her health, as he had been aware that Plaintiff had been suffering from back issues for approximately two weeks; another one of Defendant's Board of Directors, Jason Phillips ("Dr. Phillips"), M.D., and one of Defendant's Administrators, Megan Rake ("Ms. Rake"), were cc'd on this email.

22. In her email, Plaintiff informed Dr. Tiedeken that she was progressively getting better with her physician's assistance and was tapering from steroids, which was affecting her immune system due to her Leukemia diagnosis.

23. The same day, on or around 5:06 PM, Dr. Tiedeken responded, telling Plaintiff that he was glad she was doing better but that "given your recent health issue in conjunction with your history, I believe it is important to ensure you are capable of performing your full duty job."

24. Dr. Tiedeken told Plaintiff that Defendant had been "more than understanding" regarding her "recent health concerns, but given the number of days it has caused you to leave early in pain, it is affecting your work performance and those around you."

25. Dr. Tiedeken offered to discuss "how it has affected the team and your performance."

26. Dr. Tiedeken went on to say, "In order to ensure that you are safe to work and complete the duties required, we believe your physician should clear you for full duty. We will need a note of medical clearance for full duty."

27. Dr. Tiedeken told Plaintiff she would need a note from her doctor "[d]ue to multiple days leaving early the last 3 weeks" and incorrectly said Plaintiff had an unscheduled absence on October 28, 2024.

28. At approximately 6:37 PM on October 28, 2024, Plaintiff responded, informing Dr. Tiedeken that she did not require work restrictions or an accommodation, so clearance for duty was not required.

29. At 7:40 PM on October 28, 2024, Dr. Tiedeken responded, telling Plaintiff that all of Defendant's "partners and the administrator are in agreement with this plan due to the last several weeks and to ensure your safety and patient safety."

30. Dr. Tiedeken told Plaintiff that "[r]epeated absences from work due to your health condition prompted us to be concerned regarding the capability of maintaining patient safety. Once we have a note stating that you are clear to return, we will reinstate you immediately. We are doing this to ensure your well-being as well as our patients' well being [sic]."

31. Dr. Tiedeken told Plaintiff that she was directed by Defendant's Board of Directors not to report to work until she was medically cleared.

32. Dr. Tiedeken did not explain what, specifically, Plaintiff needed to be medically cleared from.

33. On October 29, 2024, Plaintiff visited her Primary Care Physician ("PCP"), where she was monitored for high blood pressure/hypertension.

34. High blood pressure/hypertension constitute disabilities and serious health conditions within the meaning of the ADA and PHRA in that they severely limit one or more major life activities, and require ongoing care and/or treatment for an extended period.

35. However, at this time, Plaintiff was given a note to return to work with no restrictions or limitations.

36. On or about February 28, 2025, Plaintiff was advised by Dr. Tiedeken that some of Plaintiff’s critical job responsibilities, such as case scheduling for the facility, were being given to Defendant's Staff Nurse, Joy Platchek ("Ms. Platchek").

37. When questioning Dr. Tiedeken on his decision to remove some of her duties, Dr. Tiedeken told Plaintiff he was "looking out for [Plaintiff’s] best interests," due to her disabilities.

38. During this conversation, Dr. Tiedeken brought up alleged attendance issues, which were proven to be false.

39. That same day, on or about February 28, 2025, Plaintiff submitted a request to be reasonably accommodated in connection with her disabilities to Ms. Rake via email.

40. Therein, Plaintiff included the issues she was facing with Dr. Tiedeken, and that she wanted to ensure there would be no issues with her ability to attend her oncology appointments.

41. On or about April 2, 2025, Plaintiff received a call from a staff member who worked under Dr Phillips.

42. During this call, Plaintiff was advised that she needed to be really careful, because Dr. Tiedeken was talking badly about her in the office.

43. Immediately following this conversation, Plaintiff sent an email to Ms. Rake, asking if she would take any remedial and/or corrective action in response to Dr. Tiedeken's clearly targeted and discriminatory behavior.

44. In response, Ms. Rake scheduled a meeting for on or about May 6, 2025, to discuss Plaintiff’s complaint(s).

45. Subsequently, on or about May 6, 2025, Plaintiff met with Ms. Rake, Dr. Phillips, Defendant's Board of Director, Scott Rosenthal ("Mr. Rosenthal"), and Defendant's Attorney, John Mayernik ("Mr. Mayernik").

46. During this meeting, Plaintiff notified those in attendance of Dr. Tiedeken's targeted and discriminatory mistreatment directed towards her.

47. Furthermore, those in attendance had access to the information regarding Plaintiff’s disabilities and Plaintiff’s accommodation requests in connection thereto.

48. Ultimately, Defendant took no remedial and/or corrective action following the May 6, 2025, meeting.

49. Shortly thereafter, it was brought to Plaintiff’s attention that Dr. Phillips contacted Defendant's Regulatory Nurse, Cathy Soti ("Ms. Soti"), and asked whether Defendant really needed a DON, which was Plaintiff’s position with Defendant.

50. On or about June 24, 2025, Plaintiff was asked to meet with Dr. Phillips and Ms. Rake.

51. During this meeting, Plaintiff was told there was no corroboration from employees regarding her complaints about Dr. Tiedeken.

52. In response, Plaintiff told Ms. Rake and Dr. Phillips that she kept her complaints private, and as a result, Defendant's employees would not have known any details about them.

53. At that time, Dr. Phillips informed Plaintiff that Mr. Mayernik asked him to interview Defendant's employees, thereby informing them of Plaintiff’s complaints.

54. At the conclusion of this meeting, Dr. Phillips and Ms. Rake advised Plaintiff that Defendant still intended to eliminate her job responsibilities and to give them to Ms. Platchek.

55. Specifically, all of Plaintiff's case scheduling and staffing responsibilities, which were critical to Plaintiff's role, given to Ms. Platchek.

56. Most importantly, Dr. Phillips and Ms. Rake further advised Plaintiff that if she intended to quit after this meeting, she should give them appropriate notice.

57. In response, Plaintiff told Dr. Phillips and Ms. Rake that she had no intention of quitting.

58. On or about July 14, 2025, and upon returning from a scheduled vacation, it was brought to Plaintiff's attention that Dr. Phillips held a staff meeting, and informed everyone that Plaintiff would no longer be a part of Defendant's patient care, and would strictly be limited to administrative duties which directly affected Plaintiff's role as DON.

59. On or about July 17, 2025, Plaintiff began being isolated by Defendant's employees.

60. By way of example, when coworkers would come to Plaintiff with questions, which Plaintiff was expected to answer as DON, Ms. Platchek and Defendant's CRNA, Tiffany Keller ("Ms. Keller"), would remark to these coworkers, "why are you talking to her," "why are you in her office," and "you're not supposed to talk to her."

61. By further way of example, Plaintiff's coworker, Samantha Olsan ("Ms. Olsan"), told Plaintiff that Ms. Keller pulled her aside and advised, "you shouldn't be talking to [Plaintiff], and you're being watched because you're [Plaintiff's] friend."

62. In addition, Ms. Olsan told Plaintiff that she filed a complaint with Ms. Rake, via email, due to what Ms. Keller had told her.

63. The following day, on or about July 18, 2025, Plaintiff emailed Defendant's Board of Directors and Ms. Rake to request a new job description, as to comply with state regulations.

64. However, Plaintiff was terminated from employment by Defendant shortly thereafter, and advised by Mr. Mayernik that Defendant "just wanted to part ways amicably," while failing to provide Plaintiff with the reason for her termination.

65. At the time of Plaintiff's termination, Defendant had refused to engage in the interactive process to determine a reasonable accommodation in connection to Plaintiff's disabilities, in violation of the ADA and PHRA.

66. It is believed, and therefore, averred Defendant terminated Plaintiff's employment because of her actual and/or perceived disabilities, her past record of impairment, because Defendant regarded Plaintiff as being disabled, and in retaliation for her request to be reasonably accommodated in connection thereto, in violation of the ADA and PHRA.

67. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, et seq.**
**DISCRIMINATION, FAILURE TO ACCOMMODATE, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, AND RETALIATION**

68. Paragraphs 1 through 67 are hereby incorporated by reference as though the same were fully set forth at length herein.

69. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

70. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

71. Plaintiff's Leukemia and high blood pressure/hypertension substantially limited her ability to engage in several major life activities for an extended period of time.

72. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

73. Defendant was aware of Plaintiff's disabilities and need for a reasonable accommodation, her record of impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

74. Plaintiff requested a reasonable accommodation in the form of a medical leave and/or intermittent absences for doctor's appointment in connection with her disabilities.

75. Despite her disabilities, Plaintiff would have been able to perform the essential functions of her job, with or without a reasonable accommodation.

76. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining reasonable accommodations for Plaintiff, and by terminating Plaintiff's employment because of her actual and/or perceived disabilities, for her past record of impairment, because Defendant regarded Plaintiff as disabled, and/or because of Plaintiff's request for reasonable accommodations in connection to her disabilities.

77. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial;

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D. Pre-judgment interest in an appropriate amount;

E. Such other and further relief as is just and equitable under the circumstances; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

**COUNT II**
**THE PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951, *ET SEQ.***
**DISCRIMINATION, FAILURE TO ACCOMMODATE, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, AND RETALIATION**

78. Paragraphs 1 through 77 are hereby incorporated by reference, as though the same were fully set forth at length herein.

79. At all times relevant hereto, Defendant had at least fifteen (15) employees.

80. Plaintiff is a qualified individual with one or more disabilities within the meaning of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

81. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled within the meaning of the PHRA.

82. Plaintiff asked for a reasonable accommodation in connection with her disabilities.

83. Defendant failed to engage in the interactive process with Plaintiff to determine a reasonable accommodation.

84. Upon information and belief, Defendant retaliated against Plaintiff for her request for a reasonable accommodation in connection with her disabilities.

85. Despite her disabilities, Plaintiff would have been able to perform the essential functions of her job, with or without a reasonable accommodation.

86. By reason of the foregoing, Defendants, through its agents, officers, servants, and/or employees, has violated the PHRA by discharging Plaintiff because of her disabilities, her record of disability/impairment, because Defendant regarded Plaintiff as being disabled within the meaning of the PHRA, and/or in retaliation for requesting a reasonable accommodation for her disabilities.

87. Defendant further violated the PHRA by failing to engage in the interactive process with Plaintiff.

88. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses, and compensatory damages in an amount to be determined at trial;

B. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

C. Pre-judgment interest in an appropriate amount; and

D. Such other and further relief as is just and equitable under the circumstances; and,

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Mary Kramer*_____

Mary Kramer, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
Phone: (267) 273-1054
Fax: (215) 525-0210
mkramer@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: October 6, 2026

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.